**FILED & ENTERED**

**NOV 27 2013**

**CLERK U.S. BANKRUPTCY COURT**
**Central District of California**
**BY** ghaltchi   **DEPUTY CLERK**

**UNITED STATES BANKRUPTCY COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**LOS ANGELES DIVISION**

| | |
|---|---|
| In re:<br><br>CESAREO GUTIERREZ,<br><br>Debtor(s). | Case No.: 2:12-bk-49133-NB<br><br>CHAPTER 13<br><br>**TENTATIVE RULING THAT PETITION DATE IS THE APPROPRIATE DATE TO DETERMINE IF JUNIOR LIENS ARE SUBJECT TO MODIFICATION**<br><br><u>Continued hearing</u><br>Date:          February 18, 2014<br>Time:         2:00 p.m.<br>Courtroom: 1545 |

    The debtor has filed a motion to avoid two junior liens on property that he claims as his principal residence (the "Motion"). A hearing was held on July 31, 2013 and continued several times. Appearances were as noted on the record.

    A separate written memorandum (dkt. 34) (the "Valuation Memorandum") addresses the value of the subject property as of two alternative dates. As of October of 2013, the tentative value is $405,000, which apparently is not low enough to avoid either junior lien. Alternatively, if the governing date is roughly a year ago on November 27, 2012, when the debtor filed his bankruptcy petition (the "Petition Date"), then the Valuation Memorandum tentatively values the property at $370,000, which apparently is

low enough to avoid the most junior lien.  The appropriate valuation date is a difficult question, but the Valuation Memorandum presumes that the appropriate date for valuation is the more current date:  October of 2013.

Based on further research and reflection, and subject to briefing as set forth below and argument at the time and date set forth in the caption, the present tentative ruling is that the Petition Date is the governing date for purposes of determining whether the junior liens are entirely underwater and can be treated as unsecured claims.  *See In re Zimmer*, 313 F.3d 1220 (9th Cir. 2002); *In re Lam*, 211 B.R. 36 (9th Cir. BAP 1997), *appeal dismissed*, 192 F.3d 1309, 1311 (9th Cir. 1999).  *See generally In re White Crane Trading Co.,* 170 B.R. 694, 700-01 (Bankr. E.D. Cal. 1994) (at any time - prior to appeal - bankruptcy court could change its mind based on new information or argument or "just fresh thoughts").

## I.   DISCUSSION

Bankruptcy generally modifies the rights that creditors would have under nonbankruptcy law.  Claims secured by a lien on property of the bankruptcy estate ordinarily can be bifurcated into a secured claim up to the value of that lien and an unsecured claim for the deficiency.  11 U.S.C. 506(a)&(d).  *See also Dewsnup v. Tim,* 502 U.S. 410 (1992); *Nobleman v. Am. Sav. Bank*, 508 U.S. 324 (1993).

An exception, however, applies to certain liens.  A chapter 13 plan can "modify the rights of holders of secured claims, *other than* a claim secured only by a security interest in real property that is the debtor's principal residence."  11 U.S.C. § 1322(b)(2) (emphasis added).

There is an exception to the exception.  A claim is not a "secured claim," for bankruptcy purposes, if the subject lien is entirely underwater:

> An allowed claim of a creditor secured by a lien on property in which the [bankruptcy] estate has an interest … is a secured claim to the extent of the value [to which the lien attaches] *and is an unsecured claim* [as to the remainder].  [11 U.S.C. § 506(a)(1), emphasis added]

Therefore a chapter 13 plan can "modify" the rights of a junior lienholder on a

principal residence if the lien is entirely underwater.  *Zimmer*, 313 F.3d 1220 (construing *Nobleman*, 508 U.S. 324); *Lam*, 211 B.R. 36 (same).

Typically a debtor seeks to "modify" the lienholder's rights in two ways.  First, the debtor's plan proposes to treat the claim as unsecured for purposes of distributions during the plan's term.  Second, the plan contemplates that several years later, upon completion of payments under the plan or receipt of a chapter 13 discharge, the lien will be avoided.

This begs the question, as of what date should the bankruptcy court determine if the junior lien is entirely underwater?  The Bankruptcy Code does not provide an explicit answer.

### (A) **Statutory analysis**

Two sections of the Bankruptcy Code are most relevant.  In favor of using the petition date, section 502(b) provides,

> the court, after notice and a hearing, shall determine the amount of [claims to which an objection is made] in lawful currency of the United States *as of the date of the filing of the [bankruptcy] petition* … [11 U.S.C. § 502(b), emphasis added, inapplicable exceptions omitted]

On the other hand, a good argument can be made that the dollar amount of a claim is a different issue from whether a claim is treated as a secured claim or an unsecured claim.  The same date may or may not apply to both determinations.

Section 506, quoted in part above, is entitled "[d]etermination of secured status."  It states that value:

> shall be determined in light of the purpose of the valuation and of the proposed disposition or use of such property, and *in conjunction with any hearing* on such disposition or use or *on a plan affecting such creditor's interest*.  [11 U.S.C. § 506(a)(1)]

It is important not to read too much into the emphasized language.  It does not state that valuation must be as of the hearing date (or any other specific date), only that it must be determined "in conjunction with" the confirmation hearing.  Nevertheless, it is true that the statute could be read to *imply* that valuation as of the hearing date is

-3-

1 favored if no other considerations apply.  In this case, as discussed below, other
2 considerations do apply.
3 It is also true that Congress specified the petition date as the valuation date in
4 the next paragraph of the statute, which was added in 2005.  *See* 11 U.S.C. § 506(a)(2)
5 (value of certain types of personal property collateral is determined "as of the date of
6 filing of the petition").  As other courts have pointed out, however, the specific reference
7 to the petition date in paragraph (2) of the statute does not mean that the petition date is
8 prohibited under paragraph (1) – it simply leaves the appropriate date of valuation under
9 paragraph (1) to the discretion of the bankruptcy courts.  *In re Marsh*, 929 F.Supp.2d
10 852, 855-56 (N.D. Ill. 2013).  *See generally In re Johnson*, 165 B.R. 524, 528 (Bankr.
11 S.D. Ga. 1994) ("The legislative history of § 506 unequivocally indicates that [§ 506(a)]
12 is intended to accommodate a flexible approach to valuations rather than a single, fixed
13 method.") (*citing* H.R.Rep. No. 595, 95th Cong., 1st Sess. (1977) pp. 356–57, U.S.Code
14 Cong. & Admin.News 1978, pp. 5787, 6312).
15 Based on the foregoing analysis, section 506(a) provides no clear answer as to
16 the date of valuation.  Another section of the Bankruptcy Code is similar, in that it may
17 appear at first glance to suggest a valuation date but in fact is ambiguous.
18 For purposes of confirming a chapter 13 plan, the "value, *as of the effective date*
19 *of the plan*, of property to be distributed under the plan" must be not less than the
20 allowed amount of the secured claim."  11 U.S.C. § 1325(a)(5)(B)(ii) (emphasis added).
21 It has been argued that the statute's reference to "the effective date of the plan" requires
22 a valuation date around the same time.
23 The reference to the effective date, however, modifies "property to be distributed
24 under the plan," not "the allowed amount of the secured claim."  *See In re King,* 2003
25 WL 22110779, at *2 n. 11 (Bankr. E.D. Pa.) (citing *In re Beard,* 108 B.R. 322, 324
26 (Bankr. N.D. Ala. 1989)).  "In other words, § 1325(a)(5)(B)(ii) merely provides that the
27 size of a secured claim should be adjusted by a discount factor, but the section
28 presupposes that the value of the claim has already been fixed."  *TD Bank, N.A. v.*

1 *Landry*, 479 B.R. 1, 5 (D. Mass. 2012) (citations omitted). Again, the statute does not specify the date of valuation.

Turning to the case law, there is also no clear answer. The Supreme Court has interpreted section 506 to provide the benefits of appreciation to secured creditors in a chapter 7 case after a judicial valuation in one of the debtor's prior unsuccessful chapter 11 cases, but this is a chapter 13 case and there was no prior judicial valuation. *See Dewsnup,* 502 U.S. 410, 417.

Valuation dates in general have been the subject of much disagreement. *See generally In re Wood,* 190 B.R. 788, 790-91 & nn. 1-7 (Bankr. M.D. Pa. 1996) (citing numerous cases applying divergent approaches to proper valuation date). Some of the case law predates the 2005 amendments adding § 506(a)(2), but they were interpreting the language that is now in § 506(a)(1) so those cases continue to be relevant regarding the proper date for valuation.

It is true that majorities appear to have emerged in the case law in favor of certain dates for sections of the Bankruptcy Code *other than* section 1322(b)(2), but those decisions have not converged on any generally applicable rule that would help in applying section 1322(b)(2) itself. *See In re Alpine Group, Inc.,* 151 B.R. 931, 933-36 (9th Cir. BAP 1993) (reversible error for bankruptcy court to value collateral as of petition date, rather than as of sale date, for purposes of determining whether creditor was oversecured under section 506(b)); *In re Boyd,* 2009 WL 2823660, at *3 n. 3 (Bankr. N.D. Cal.) (in applying "best interest" test, "the bulk of the reported cases that the Court could find concluded that either the hearing date or a later date, such as the date the plan was confirmed or the date the confirmation became final, [is] the appropriate date for valuation"); *King,* 2003 WL 22110779, at *2-3 (agreeing with "the majority of cases addressing valuation of collateral in the cram down context" of § 1325(a)(5)(B), which "adopt the [ ] position...that collateral should be valued as of or near the confirmation date," because among other things if secured claims were fixed at the petition date then "secured creditors would be receiving adequate protection

automatically when the Code does not contemplate this right"); *cf. In re Farmer*, 257 B.R. 556, 563 (Bankr. D. Mont. 2000) (applying "dual valuation method" under which "the petition date shall be used as the date to establish a value for motions … for relief from the automatic stay, and the confirmation date shall be used as the date to establish the value for satisfying the confirmation requirements of 11 U.S.C. § 1325(a)(5)(B)"); *and compare Johnson,* 165 B.R. 524, 527-29 (valuation for purposes of chapter 13 confirmation should be as of petition date). *See also Wood*, 190 B.R. 788, 794-95 (in chapter 11 case prior to enactment of § 1123(b)(5), applying a totality of the circumstances test in determining the appropriate valuation date, and choosing petition date when property had appreciated "solely" due to debtor's successful postpetition rezoning efforts); *In re Aubain*, 296 B.R. 624 (Bankr. E.D.N.Y. 2003) (applying the *Wood* factors); *In re Dheming,* 2013 WL 1195652, at *3 (Bankr. N.D. Cal.) ("The Court concludes that the equitable approach set forth in *Aubain* and *Wood* may be appropriate where there are unusual circumstances.").

The relatively few cases to address the appropriate valuation date under section 1322(b)(2) reach inconsistent conclusions. *Compare, e.g., In re Crain*, 243 B.R. 75, 82-83 (Bankr. C.D. Cal. 1999) ("valuation should occur on or near the time of the chapter 13 confirmation hearing …" based on § 506(a)), *with Aubain*, 296 B.R. 624, 634-39 (disagreeing with *Crain*, applying totality of circumstances approach, and using valuation as of petition date when lender did not participate in case until shortly before completion of plan); *In re Dean*, 319 B.R. 474, 477-78 (Bankr. E.D. Va. 2004) (disagreeing with both *Crain* and *Aubain* and concluding that "the petition date is the appropriate date to value debtors' principal residence because debtors have used the property as their principal residence throughout the bankruptcy case from the date of their petition to the present"); *In re Landry*, 462 B.R. 317, 320-23 (Bankr. D. Mass. 2011) (applying confirmation date) ("*Landry I*"), *reversed,* 479 B.R. 1 ("*Landry II*") (applying petition date).

To add to the confusion, "value is only one side of the § 1322(b)(2) coin" and to

1 determine "whether a mortgage claim is out of the money it is necessary to know the
2 amount of the senior debt on the collateral," which may vary over time. *In re Sarno*, 463
3 B.R. 163, 165 (Bankr. D. Mass. 2011) (citation omitted).  In *Sarno* the senior debt was
4 almost unchanged from the petition date, but the decision holds that because an
5 integral part of determining the treatment of junior liens under a plan is to determine the
6 dollar amount of senior liens, and because that dollar amount is determined as of the
7 petition date, therefore the proper date for valuing the home is the petition date.

8       Parties in this district often assume that two decisions of the Bankruptcy
9 Appellate Panel for the Ninth Circuit (the "BAP") apply the petition date for purposes of
10 valuation under § 1322(b)(2) and the parallel provisions of chapter 11.  *See In re*
11 *Abdelgadir,* 455 B.R. 896, 901 (9th Cir. BAP 2011) (interpreting 11 U.S.C. § 1123(b)(5));
12 *In re Benafel,* 461 B.R. 581 (9th Cir. BAP 2011) (applying *Abdelgadir* approach to
13 § 1322(b)(2)).  Although the tentative ruling reached below is to agree that the petition
14 date is the appropriate date, *Abdelgadir* and *Benafel* did not actually determine what
15 date should be used for valuation under section 1322(b)(2).

16       Those cases address the different issue of what date applies in determining
17 whether a residence is a debtor's "principal residence," and they specifically distinguish
18 valuation issues.  "The value of [the collateral securing a creditor's] claim, whether [the
19 claim] is secured or unsecured, is a distinct issue from whether [its] claim is secured by
20 the Debtors' principal residence," and the value of the collateral and the consequent
21 "status" of a claim as secured or unsecured may change "[t]hroughout a bankruptcy
22 proceeding." *Abdelgadir,* 455 B.R. at 901-02.  *See also In re Schayes*, 483 B.R. 209,
23 215 (Bankr. D. Ariz. 2012) ("The value of an unsecured creditor's claim…is distinct from
24 whether that creditor has a claim that is secured by the debtor's principal residence.").
25 *See also In re Zieder*, 263 B.R. 114, 119 (Bankr. D. Ariz. 2011) (Section 506(a)
26 "expressly addresses the possibility of multiple determinations [of value] at different
27 times.").

28       Nevertheless, although *Abdelgadir* and *Benafel* do not explicitly hold that the

petition date should be used for valuation, that conclusion appears to flow logically from their reasoning, as held by a District Court in another jurisdiction. *Landry II*, 479 B.R. 1, 7-8 (citing *Abdelgadir* and *Benafel*). As a preliminary matter *Landry II* rejects the argument that, because the "purpose of the valuation was to determine how to distribute the property under the plan," therefore the confirmation date should be used:

> [That argument] conflates the analysis of whether a creditor holds a particular type of claim (a claim secured by the debtor's principal residence) with a determination of how the value of the property is to be distributed *after* the nature of the claim has been established. [*Landry II*, 479 B.R. at 6, emphasis in original]

In other words, according to *Landry II*, although the *distributions* on account of a claim are determined in connection with confirmation of a plan, the petition date is used to determine not only the dollar amount of that claim (§ 502) but also the "type" of the claim, meaning whether it is a type of claim that can be modified under section 1322(b)(2). Part of that analysis is whether the property is in fact the "principal residence," and another part of that analysis is whether the junior lien is entirely underwater, and it is consistent for both parts of the analysis to be done as of the same date – the petition date. That is not the only possible reading of the statute, but it appears to be most in keeping with section 502 and the flexibility of section 506.

> Moreover, it would be illogical to determine whether the property is the debtor's principal residence for purposes of § 1322(b)(2) on the petition date, but to determine the value of the property (which may often be related to the use of the property) at a different date. For example, suppose a debtor used the property as his principal residence on the petition filing date; then, prior to the effective date of the plan, stopped living there (perhaps due to financial hardship), as a result of which the property began to deteriorate and declined in value. Or suppose the debtor moved out and rented the property to tenants who improved the property and increased its value. It would be incongruous to conclude that the operative date for determining each prong of the § 1322(b)(2) analysis would be different, especially in light of the relationship between those two prongs. Such an approach would not only be illogical, but it would allow for the possibility of gamesmanship. [*Landry II*, 479 B.R. at 8 n. 7, citation omitted.]

For all of these reasons, although there is no plain meaning to the relevant statutory provisions and there is no clear answer in the case law, the tentative ruling is

that the petition date rather than the date of the confirmation hearing is the most appropriate date to use for determining whether a junior lien is subject to the antimodification provisions of section 1322(b)(2). In other words, both property valuation and the determination of the senior lien amount apparently should be determined as of the petition date.[1]

### B.    Policy Considerations

Whatever date is used for valuation, an argument can be made that either the debtor or the junior lienholder will receive a "windfall" depending on whether the property appreciates or depreciates after that date. For the following reasons, however, using the petition date appears to be better from a policy perspective.

Various scenarios are possible: as of the petition date, the junior lien could be partially secured or fully underwater, and thereafter the property could depreciate or appreciate. Each scenario is examined below.

Suppose that on the petition date the junior lienholder has a secured claim, of any dollar amount. In that event the junior lienholder is entitled to demand "adequate protection," failing which the bankruptcy court "shall" grant relief from the automatic stay (11 U.S.C. § 362(d)(1)), so the junior lienholder has legal protections against any "down

---

[1] It is true that there are statements in both *Abdelgadir* and *Benafel* approving of the bankruptcy courts' use of the confirmation hearing date in those cases. But the BAP was addressing *senior* liens (the debtors in those cases argued that the liens were not secured by a "principal residence" at all, so they could be modified – bifurcated – even though they were senior liens). Even with bifurcation, however, a senior lien is a secured claim to at least some extent, so it is entitled to the benefits of section 506(b) and 1325(a)(5)(B)(ii) and as noted above the cases generally hold that for those purposes valuation should be as of the date of the confirmation hearing. *See, e.g., Alpine Group, Inc.,* 151 B.R. 931. The treatment of senior secured claims has no bearing on the different question of what date should be used for the analysis under a separate statutory provision (section 1322(b)(2)) with respect to a different type of claim: a wholly unsecured junior lien. Therefore the statements in *Abdelgadir* and *Benafel* should not be interpreted as applying a flat rule that the confirmation hearing date always governs. *See Adbelgadir,* 455 B.R. 896, 902 (noting that the bankruptcy court used the confirmation hearing date for valuation, initially describing that court's reliance on section 506(a) as "compelling" because the purpose of valuation was for confirmation, but later noting that there is a conflict in the cases as to the proper date of valuation and stating that the bankruptcy court's use of the confirmation hearing date "may" be appropriate, citing *Crain,* 243 B.R. 75, and *Dean*, 319 B.R. 474). *See also Benafel,* 461 B.R. 581, 587 (same).

1 side" after the petition date. Conversely, if the collateral appreciates then the partially
2 secured junior lienholder will gain the benefits of increased collateral value, such as the
3 right in the event of a sale of the property to collect up to the full dollar amount of its
4 debt including attorney fees and other charges. *See Alpine Group, Inc.,* 151 B.R. 931,
5 933-36.

6 On the other hand, if the junior lien is entirely underwater as of the petition date
7 then by definition the junior lienholder would receive no present economic value if it
8 were free to exercise its nonbankruptcy rights and foreclose. This also means that the
9 debtor, who is paying senior liens in order to retain the property, is investing substantial
10 funds in property that is fully encumbered, which is a risky investment from a purely
11 economic perspective. If the junior lienholder thereafter could use an increased value to
12 prevent the debtor from modifying its debt, then the financial restructuring would
13 essentially allocate all of the risk to the debtor and all of the benefits to the junior
14 lieholder. "Heads I win, tails you lose."

15 It makes sense to interpret ambiguous provisions of the Bankruptcy Code
16 equitably and consistent with reorganization and fresh start policies of the Code. As
17 one court put it, the question is whether "the junior lienor should enjoy the benefit …
18 when it no longer bears the risk," to which "the answer must be 'no.'" *Marsh*, 929
19 F.Supp.2d 852, 858.

20 In addition, it is not just the debtor's interests that are at stake. If the debtor is
21 forced to pay more to the junior lienholder, that will have to come out of disposable
22 income, which generally means at the expense of unsecured claims. If the debtor lacks
23 any disposable income then the debtor likely will have to surrender the property. That
24 affects not only the debtor but also the senior lienholder who no longer will receive
25 monthly payments, and instead will have the costs associated with a nonperforming
26 loan and foreclosure. The only marginal benefit may be to the junior lienholder: it might
27 prefer to take its chances with foreclosure, but that is a small benefit in exchange for the
28 likely costs to all other parties in interest.

Another policy concern comes from the fact that, as noted above, "value is only one side of the § 1322(b)(2) coin" and the dollar amount of the senior debt is important to determine whether the junior lien is entirely underwater. *Sarno*, 463 B.R. 163, 165. Any negotiated reduction of the senior debt might transform a junior lien that is entirely underwater on the petition date into a lien that is at least partially secured as of the confirmation hearing, which is a disincentive to enter into any loan modification that would reduce the debt. It seems contrary to the purposes of the Bankruptcy Code to interpret it in a way that discourages consensual loan reduction.

There are some countervailing policy considerations. The foregoing discussion contemplates valuation as of the petition date for some purposes but as of the confirmation hearing date for other purposes, which potentially could lead to duplicative litigation and perhaps inconsistent results. As noted above, however, valuation already can occur as of multiple dates for different purposes, and it is not necessarily inconsistent to reach different results under different sections of the Bankruptcy Code.

Another potential problem is that valuation as of the petition date will be retroactive, which is more challenging than a present valuation. Appraisers may be reluctant to opine as to historical value, and it is difficult for appraisers and the court not to look back with "20/20 hindsight" that distorts what the court would have found if the issue had been presented at the historical time – *e.g.,* if the real estate market has subsequently rebounded from low values as of the petition date, then a low valuation may seem unduly pessimistic in hindsight, even if it would have been accurate at the time. These are real concerns, but they are not insurmountable and bankruptcy courts deal with similar issues all the time.

Nor is it an insurmountable problem that a debtor at least theoretically could file a bankruptcy petition when the property has reached its lowest value, so as to retain all the anticipated appreciation. First, other considerations such as job loss, major illness, or divorce generally play a much larger role in whether and when to file a bankruptcy petition. Second, anticipated trends in real estate values are uncertain. Third, any fixed

1 valuation date theoretically can be manipulated – if the date of the confirmation hearing
2 controls then debtors or junior lienholders may attempt to delay that hearing when that
3 would suit their needs – so this concern does not necessarily have much bearing on
4 whether the court should use the petition date or the date of the confirmation hearing.
5 Fourth, any manipulation can be addressed using some of the many other tools
6 available to the bankruptcy court, including good faith requirements.  *See Abdelgadir*,
7 455 B.R. 896, 900 (quoting bankruptcy court's comments that "[g]ood faith is always an
8 issue," in addressing the possibility that a debtor's purported change in principal
9 residence is a sham to be able to modify liens against the property).

10    On balance, policy considerations appear to point in the same direction as the
11 statutory analysis.  The petition date appears to be the most appropriate date to
12 determine whether the junior lienholder's claim is or is not subject to modification under
13 section 1322(b)(2).

14 **III.    CONCLUSION**

15    Based on the foregoing, the tentative ruling is to use the Petition Date as the date
16 for valuation and determining the dollar amount of senior liens under *Zimmer* and *Lam*.
17 As noted above, however, the parties have not briefed the foregoing issues and this is
18 not a final ruling.  Based on the complexity of the issues and the upcoming holidays, the
19 following briefing schedule will apply:  January 7, 2014 for briefs by the junior
20 lienholder(s); January 28, 2014 for opposition brief(s) by the debtor; and February 4,
21 2014 for any reply by the junior lienholder(s).

22                                ###

Date: November 27, 2013

Neil W. Bason
United States Bankruptcy Judge

# NOTICE OF ENTERED ORDER AND SERVICE LIST

Notice is given by the court that a judgment or order entitled (*specify*) **_TENTATIVE RULING THAT PETITION DATE IS THE APPROPRIATE DATE TO DETERMINE IF JUNIOR LIENS ARE SUBJECT TO MODIFICATION_** was entered on the date indicated as AEntered@ on the first page of this judgment or order and will be served in the manner indicated below:

**I. SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (ANEF@)** B Pursuant to controlling General Order(s) and Local Bankruptcy Rule(s), the foregoing document was served on the following person(s) by the court via NEF and hyperlink to the judgment or order. As of 11/27/13, the following person(s) are currently on the Electronic Mail Notice List for this bankruptcy case or adversary proceeding to receive NEF transmission at the email address(es) indicated below.

- Caroline Djang    cdjang@rutan.com
- Kathy A Dockery (TR)    efiling@CH13LA.com
- Gerald S Kim    cdcaecf@bdfgroup.com
- Peter L Lago    pllago@msn.com
- United States Trustee (LA)    ustpregion16.la.ecf@usdoj.gov
- Darlene C Vigil    cdcaecf@bdfgroup.com

☐ Service information continued on attached page

**II. SERVED BY THE COURT VIA U.S. MAIL:** A copy of this notice and a true copy of this judgment or order was sent by United States Mail, first class, postage prepaid, to the following person(s) and/or entity(ies) at the address(es) indicated below:

**Debtor:**
Cesario Gutierrez
11849 Horton Ave.
Downey, CA 90241

☐ Service information continued on attached page

**III. TO BE SERVED BY THE LODGING PARTY**: Within 72 hours after receipt of a copy of this judgment or order which bears an AEntered@ stamp, the party lodging the judgment or order will serve a complete copy bearing an AEntered@ stamp by U.S. Mail, overnight mail, facsimile transmission or email and file a proof of service of the entered order on the following person(s) and/or entity(ies) at the address(es), facsimile transmission number(s), and/or email address(es) indicated below:

☐ Service information continued on attached page

---

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*August 2010*    **F 9021-1.1.NOTICE.ENTERED.ORDER**